UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY L. CORNER, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 5183 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JACKIE ENGELHART, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mary L. Corner claims to be the duly elected President of Northwest Illinois Area Local 7140, American Postal Workers Union, AFL-CIO ("NWIAL"). So does Defendant Jackie Engelhart, and it is Engelhart who is currently occupying the office of President and discharging its duties. In this suit to enforce what she claims to be the official decision declaring her President, Corner asks the court to order Engelhart to vacate NWIAL's building and to turn over its books, papers, and records. Engelhart has moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), while Corner has moved to enjoin Engelhart from performing any work as NWIAL's President. Engelhart's motion is granted, and Corner's motion is denied without prejudice for want of jurisdiction.

Because subject matter jurisdiction is at issue, the court may "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (internal quotation marks omitted). The evidence of record shows the following facts to be beyond reasonable dispute.

-1-

NWIAL represents certain United States Postal Service employees and maintains its office in Elmhurst, Illinois. Doc. 13 at ¶ 2. Corner and Engelhart were candidates in the April 2011 election for President of NWIAL. *Id*. at ¶ 3. The American Arbitration Association certified Engelhart as the winner by a 537-268 margin. *Ibid*.; Doc. 13-1 at 2-3.

The NWIAL Constitution establishes an Election Committee, consisting of three members and one alternate member, to handle election protests. Doc. 13 at ¶ 4; Doc. 13-1 at 21, 25-29. Corner protested the April 2011 election on ground that Engelhart was ineligible to run for and serve as President. Doc. 21-1 at 63; *see also* Doc. 13 at ¶ 6; Doc. 13-1 at 38-39. A similar protest was filed by Maria Porch-Clark, the Chairperson of the NWIAL Election Committee. Doc. 22 at 31-32; *see also* Doc. 13 at ¶ 5; Doc. 13-1 at 35-36. On May 5, 2011, the NWIAL Election Committee—composed of its two other members plus the alternate—ruled that Porch-Clark, having filed a protest, could not sit on the Committee for that election cycle and would be replaced by the alternate; the Committee also rejected Porch-Clark's protest on the merits, finding that it was untimely and that Engelhart was eligible to run for and serve as President. Doc. 13 at ¶ 5; Doc. 13-1 at 35-36. The same day, the Committee rejected Corner's protest, again finding that Engelhart was eligible. Doc. 13 at ¶ 6; Doc. 13-1 at 38-39.

The NWIAL Constitution provides that members may appeal an adverse decision of the NWIAL Election Committee to the National Election Appeals Committee of NWIAL's parent organization, the American Postal Workers Union ("APWU"). Doc. 13 at ¶ 4; Doc. 13-1 at 26. Corner did just that on May 17, 2011. Doc. 21-1. Her appeal (1) challenged the composition of the NWIAL Election Committee, arguing that Porch-Clark had been wrongfully replaced by the alternate, and (2) maintained that Engelhart was not eligible to run for or serve as President. *Id*.

at 2-7; Doc. 21-2; Doc. 21-3.  The National Election Appeals Committee followed up with information requests regarding both elements of Corner's appeal.  Doc. 22 at 23-27.  On August 1, 2011, the National Election Appeals Committee denied the appeal.  Its decision reads:

> Dear Ms. Corner:
>
> The National Election Appeals Committee (NEAC) has reviewed the above-referenced appeal with regard to the Northwest Illinois Area Local.  After careful review of all documents and evidence provided, the NEAC upholds the decision of the Local Election Committee and denies your election appeal in its entirety.
>
> Based upon the decision of the National Election Appeals Committee, the following officers are the duly elected officers of the Northwest Illinois Area Local based upon the votes of the membership:
>
> > Jackie Engelhart, President
> > Dave Baskin, Vice President
> > Al Modi, Treasurer
> > Olivia Norman, Clerk Craft Director
> > Joe Golden, Maintenance Craft Director
>
> > Yours in union solidarity,
> >
> > /s/ Cliff Guffey
> >
> > Cliff Guffey, Chairperson
> > National Election Appeals Committee

Doc. 13-1 at 41.  "Jacqueline Engelhart, President, Northwest Illinois Area Local" is listed among the cc's.  *Ibid*.

On July 26, 2011, six days before the National Election Appeals Committee issued its decision, Porch-Clark wrote two letters, one to Corner and the other to Engelhart.  Doc. 1 at 3-6.  Both letters stated that because the Appeals Committee's reviewing officer had been uncommunicative, Porch-Clark "had no other choice but to utilize my authority given to me

-3-

under the NWIAL Constitution" to declare Engelhart ineligible to run for President. *Id*. at 3, 5. The letter to Corner concluded: "As Chairperson of the NWIAL 2011 Election Committee with the authority vested in me by the NWIAL Constitution, I am removing Jackie Engelhart as the elected president of the NWIAL 2011 Election because of her ineligibility. I am declaring you (Mary L. Corner) as the President of the NWIAL Local 7140 … ." *Id*. at 4 (emphasis deleted). The letter to Engelhart concluded: "As Chairperson of the NWIAL 2011 Election Committee the authority vested in me by the NWIAL Constitution I am removing you from the Office of President because you were ineligible to be a candidate and ineligible to be elected as Officer of the NWIAL 2011 Election." *Id*. at 6. Both letters cc'ed Cliff Guffey, the Chairperson of the National Election Appeals Committee and the individual who signed the Appeals Committee's subsequent rejection of Corner's appeal.

Title IV of the Labor Management Reporting and Disclosures Act ("Act"), 29 U.S.C. § 481 *et seq*., governs union elections, including elections of unions that represent postal workers. *See* 29 C.F.R. § 451.3(a)(4). Title IV sets forth the procedures by which union members may challenge the results of an election. A union member first must exhaust "the remedies available under the constitution and bylaws of such [union] organization and of any parent body." 29 U.S.C. § 482(a)(1). Then, if the union renders an adverse decision or fails to render a final decision "within three calendar months" of the member's invocation of the union's internal remedies, the member may file a complaint with the Secretary of Labor "within one calendar month thereafter" asserting a "violation of any provision of [§ 481] (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)." *Id*. § 482(a); *see Corner v. U.S. Dep't of Labor*, 219 Fed. Appx. 492, 493 (7th Cir.

2007).  If the Secretary "finds probable cause to believe that a violation … has occurred and has not been remedied, [s]he shall … bring a civil action."  29 U.S.C. § 482(b); *see Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 373 (7th Cir. 1989).  "When the Secretary receives a complaint but declines to challenge the election, the Secretary must issue a statement of reasons outlining the essential facts and explaining the reasons for the decision."  *Corner v. Solis*, 380 Fed. Appx. 532, 535 (7th Cir. 2010).  The Secretary's decision to decline to challenge an election is subject to judicial review.  *See ibid.*; *Corner*, 219 Fed. Appx. at 494.

Title IV's procedures "for challenging an election already conducted [are] exclusive."  29 U.S.C. § 483; *see Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 544 (1984) ("Congress clearly intended to lodge exclusive responsibility for post-election suits challenging the validity of a union election with the Secretary of Labor."); *Trbovich v. United Mine Workers*, 404 U.S. 528, 531 (1972) ("[Section 483] prevents union members from initiating a private suit to set aside an election."); *Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 682, 686 (7th Cir. 1973) ("complaint to and an action brought by the Secretary of Labor … is the exclusive means of challenging an election already conducted").  This means that courts do not have jurisdiction over private lawsuits raising challenges within the scope of Title IV.  *See Driscoll*, 484 F.2d at 686 n.9.  "Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election."  *Trbovich*, 404 U.S. at 532.  The exclusivity of this remedy "is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize

the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." *Calhoon v. Harvey*, 379 U.S. 134, 140 (1964).

In this case, Corner seeks to oust Engelhart as NWIAL's President on the ground that she was ineligible to run for and hold office. Although Corner does not frame her suit in these terms, she is challenging the NWIAL Election Committee's decision rejecting her protest and the National Election Appeals Committee's rejection of her appeal of the NWIAL Election Committee's decision. As *Calhoon v. Harvey*, *supra*, teaches, because the suit "basically relat[es] … to eligibility of candidates for office, [it] fall[s] squarely within Title IV … and [is] to be resolved by the administrative and judicial procedures set out in that Title." *Id*. at 141; *see also Denov v. Chi. Fed'n of Musicians, Local 10-208*, 703 F.2d 1034, 1037 (7th Cir. 1983); *Driscoll*, 484 F.2d at 686. Thus, for Corner to keep alive her claim to NWIAL's presidency, she was required to file a complaint with the Secretary of Labor within one calendar month of the National Election Appeals Committee's decision of August 1, 2011. *See* 29 U.S.C. § 482(a).[*] Corner is familiar with this procedure, having invoked it on at least two prior occasions. *See Corner*, 380 Fed. Appx. at 534; *Corner*, 219 Fed. Appx. at 493.

Corner attempts to avoid the Act's jurisdictional bar by characterizing her suit not as one *challenging* the results of the election, but as one seeking to *enforce* the victory granted her by Porch-Clark's letters of July 26, 2011. Corner's premise is that Porch-Clark had the power to

---

[*] At a status hearing held on August 29, 2011, before Engelhart's motion to dismiss had been fully briefed, the court encouraged Corner to file a complaint with the Secretary within the designated statutory period. This course of action, the court explained, would preserve Corner's right to pursue an administrative challenge in the event the court dismissed this suit on jurisdictional grounds.

declare Engelhart ineligible to hold office and make Corner the victor. That premise is incorrect. The NWIAL Election Committee ousted Porch-Clark, replacing her with the alternate, due to the conflict of interest created by Porch-Clark's filing an election protest. In her appeal to the National Election Appeals Committee, Corner challenged not just the NWIAL Election Committee's decision that Engelhart was eligible to run for and serve as President, but also its replacement of Porch-Clark by the alternate. Doc. 21-1 at 2-7; Doc. 21-2; Doc. 21-3. The National Election Appeals Committee's written decision plainly shows that it rejected both of Corner's challenges. Doc. 13-1 at 41 ("After careful review of *all documents and evidence* provided, the NEAC upholds the decision of the Local Election Committee and denies your election appeal *in its entirety*.") (emphasis added). Thus, according to the union authority charged with making such decisions, Porch-Clark had no power to consider or resolve protests involving NWIAL's April 2011 elections. The letters from Porch-Clark declaring Corner the winner and Engelhart the loser have as much weight as letters written by any person selected at random from the Elmhurst, Illinois telephone book—that is, no weight.

The Seventh Circuit has held that *Calhoon v. Harvey*, *supra*, "requires analysis of the substance and basic nature of the complaint in order to determine whether jurisdiction exists." *Driscoll*, 484 F.2d at 686 n.9. The substance and basic nature of Corner's complaint is nothing more, nothing less, than a challenge to the union's decision declaring Engelhart the duly elected President of NWIAL and finding Porch-Clark ineligible to participate in the NWIAL Election Committee's consideration of Corner's protest. The fact that Corner filed this suit on July 29, 2011, three days before the National Election Appeals Committee rendered its decision on August 1, 2011, does not change the analysis. The Act requires union members to exhaust

internal union remedies before bringing a complaint to the Secretary of Labor, who has the exclusive authority (subject to judicial review) to bring a federal suit challenging the union's final decision. It would subvert the statutory scheme—both the exhaustion requirement and the prohibition of private litigation by union members against unions regarding matters governed by Title IV—to hold that a union member may bring a private suit so long as she does so before the union authority charged with resolving internal election challenges has rendered its decision.

For these reasons, Engelhart's motion to dismiss this suit for want of subject matter jurisdiction is granted. Because the court is without jurisdiction, Corner's motion to enjoin Engelhart from performing her duties as NWIAL President is denied without prejudice.

October 4, 2011

_____
United States District Judge